REQUESTED BY: Glenn A. Clark Dawson County Attorney
Who is responsible for the cost of the care provided to a person found to be incompetent to stand trial and committed to a state hospital pursuant to Neb.Rev.Stat. § 29-1823
(Reissue 1979)?
The county in which the crime is charged.
Neb.Rev.Stat. § 29-1823 (Reissue 1979) provides for commitment to a state hospital of persons who are incompetent to stand trial. It specifically provides that the cost of a mental evaluation precedent to a commitment is to be borne by the county wherein the crime is charged. But, the statute is silent on the issue of responsibility for costs incurred for treatment of a defendant after his commitment. The legislative history of § 29-1823 does not contain any reference to that issue. The matter is not discussed in any reported Nebraska opinion. We therefore turn to the general statutes and the opinions of other states in an effort to reach a logical solution.
A person committed as incompetent to stand trial occupies a unique legal position. He is a patient being treated in a state hospital, but, he is also a prisoner awaiting trial. Two general statutes therefore come into play. Neb.Rev.Stat. 82-364 (Reissue 1976) provides that:
 When any person is admitted to a state institution, or receives treatment prescribed by an institution following release or without being admitted as a resident patient, the patient and his relatives shall be liable for the cost of the care, support, maintenance, and treatment of such person to the extent and in the manner provided by this act. The provisions of this act also shall apply to persons admitted to a state institution as transferees from any state penal institution or the Youth Development Center-Kearney or Youth Development Center-Geneva, but only after the expiration of the time for which the transferees were originally sentenced or committed.
That statute could conceivably govern the present situation.
However, Neb.Rev.Stat. § 29-1004 states:
 The cost of keeping and maintaining any prisoner previous to his conviction of an offense punishable by imprisonment in the Nebraska Penal and Correctional Complex, or either before or after his conviction of an offense not so punishable, or when he shall not be convicted of any offense, shall be paid by the county in which the offense may be committed, or alleged to have been committed.
And, it has been held that, `. . . it is the duty of a county to pay the expenses of the local administration of justice.' Kovarik v. County of Banner, 192 Neb. 816 at 820, 224 N.W.2d 761 at 764 (1975). These authorities could also apply.
The term `any person' as used in § 83-364 at first appears to be all inclusive. However, other states with similar statutes have restricted their application. Robb v.Estate of Brown, 518 S.W.2d 729 (1975) involved the claim of a state hospital against the guardianship of a person committed after an insanity acquittal. The relevant financial responsibility statute mandated liability on the part of any person admitted as a patient in a state hospital. However, a separate statute provided that the costs of care and treatment of defendants acquitted of crimes due to insanity could be taxed as costs. The court held that this latter statute applied stating, `This controlling proposition is that the defendant was committed under the criminal laws and the consequences of that commitment are governed by the provisions of the criminal statutes, not those of the civil statutes.' Id. at 732.
The court in In re Grams, 63 Wis.2d 194,216 N.W.2d 889 (1974) reached a similar result. That case involved the claim of a state hospital against the estate of a criminal defendant who had been treated pursuant to a determination that he was incompetent to stand trial. The financial responsibility statute provided that, `Any, . . . patient in any charitable or curative institution . . . shall be liable for such patient's maintenance.' Nevertheless, the estate of the defendant patient was not held liable. The court held that, `Any confinement or any treatment which is merely an adjunct to a criminal process . . . does not result in a collectible claim.' Id. at 197, N.W.2d at 890. That holding was followed in Boldt v. State, 98 Wis.2d 445,297 N.W.2d 29 (1980).
We believe that the reasoning contained in the forementioned cases is applicable to the question at hand. The circumstances surrounding a person committed under § 29-1823
most closely approximate those of a prisoner held prior to trial. He is committed under a criminal statute. The criminal court has exclusive jurisdiction. Most important, the detention is dependent upon the pendency of the criminal charge. That is, were the charge dismissed, a constitutionally valid basis for detention would cease to exist.Jackson v. Indiana, 406 U.S. 715, 32 L.Ed.2d 435 (1972). The treatment of the defendant is part and parcel of the local administration of the criminal justice system. Therefore, the criminal statutes and holdings apply and the county is liable.
In reaching that conclusion, we are not unmindful of the cases which hold a defendant patient liable for the cost of his care in such circumstances. See, State ex rel.Dorthea Dix Hospital v. Davis, 292 N.C. 147, 232 N.E.2d 698
(1977) and Estate of Schneider, 50 Ill.2d 152,277 N.E.2d 870 (1971). However, the financial responsibility statutes of concern in such cases imposed liability only upon the assets of the defendant patient. The Nebraska statute provides for liability on the part of relatives as well. It has been held unconstitutional to impose liability upon relatives for the cost of care provided to a person committed as incompetent to stand trial. Department of Mental Hygiene v.Hawley, 28 Cal.Rptr. 718, 379 P.2d 22 (1963).
Furthermore, prisoners at Nebraska state penal institutions are not charged for their mental treatment at state hospitals. Neb.Rev.Stat. § 83-364 (Reissue 1976). It has been held violative of equal protection to impose financial responsibility for mental treatment upon jail inmates while providing such treatment to prison inmates free of charge.McAuliffe v. Carlson, 377 F. Supp. 896 (D.Conn. 1974), supplemented, 386 F. Supp. 1245, rev'd on other grounds,520 F.2d 1305 (2d Cir. 1975), cert. denied, 427 U.S. 911,49 L.Ed. 1203 (1976).
When a statute is susceptible of two constructions, under one of which it is clearly valid, while under the other it's validity may be doubtful, the construction makes sure its validity will be given. In re Shirley's Estate,162 Neb. 613, 76 N.W.2d 749 (1956). If § 83-364 is interpreted as applicable to persons committed as incompetent to stand trial, it's constitutional validity may be doubtful on the forementioned grounds. An interpretation whereby the statute does not apply to § 29-1823 patients is permissible and would insure validity. Therefore, the latter interpretation should be given.
It is finally noted that such interpretation conforms with past opinions of this office concluding that the defendant patient is not liable for the cost of certain psychiatric examinations and treatment when rendered pursuant to a criminal proceeding. Attorney General Opinion No. 171 (1965-66); Attorney General Opinion No. 161 (1977-78); Attorney General Opinion No. 287 (1979-80).
Sincerely, PAUL L. DOUGLAS Attorney General Martel J. Bundy Assistant Attorney General APPROVED:Paul L. Douglas
Attorney General